## ANDREW LODOEN v. CITY COUNCIL OF CITY OF WARREN.[1]

June 28, 1912.

Nos. 17,740—(253).

**Local option — license to sell liquor.**

Under the law creating the city of Warren, when a majority of the votes cast at any annual city election has been cast against granting

[1] Reported in 136 N. W. 1031.

license to sell intoxicating liquors, no license can be granted until a majority of all votes cast at a subsequent annual city election is in favor of granting such license.

**"Majority" vote.**

By "majority" is meant a majority of the whole number of electors voting at the election, and not a majority of the votes recorded for or against license.

Andrew N. Lodoen appealed to the district court for Marshall county from the decision of the canvassing board of the city of Warren declaring that license to sell intoxicating liquor was defeated at the annual election of 1912. The appeal was heard upon stipulated facts by Watts and Grindeland, JJ., who made findings and as conclusion of law affirmed the decision of the city council. From the judgment entered pursuant to the findings, A. N. Lodoen appealed. Affirmed.

*Julius J. Olson* and *W. E. Rowe,* for appellant.
*A. A. Miller* and *W. J. Brown,* for respondent.

HOLT, J.

Chapter 44, subc. 5, § 5, subd. 2, p. 292, of the Special Laws of 1891, provide that "nothing contained in these articles of incorporation shall be so construed as to prevent the people of the city of Warren from deciding for themselves whether or not license shall be granted to any person or persons in said city to sell lager beer, spirituous, vinous, malt or fermented liquors; and the city recorder is hereby required, on a petition of ten (10) or more legal voters of said city, at any time not less than ten (10) days before any annual city election, to give notice that the question of license will be submitted at said election, and notice thereof shall be given by said city recorder at the same time and in the same manner that notices of annual city elections are given, and said question of license shall be determined by ballot containing the words: 'In favor of license,' or 'Against license' (as the case may be), which vote shall be canvassed and returned as is by law prescribed for canvassing election returns, and if such returns show a majority of the votes cast at such election to be against license, then in such case the city council shall

grant no license to sell  lager beer, spirituous, vinous, malt or fermented liquors in said city of Warren until reversed in the same manner at a subsequent general election, except to persons legitimately and bona fide engaged in the business or occupation of druggist, and then only for medical and mechanical purposes."

It appears that at the general city election held in the city of Warren in March, 1911, the question of whether or not license to sell intoxicating liquors should be granted was duly submitted to the electors of said city and voted thereon, and that the majority of the votes . cast at said election was against license, and that no license to sell intoxicating liquors has since said general election for the year 1911 been granted in said city of Warren.  At the annual city election held March 19, 1912, the question of license or no license was again duly submitted.  At this election 321 votes or ballots were cast.  Of these 154 were in favor of granting license, 149 against, 17 ballots of the 321 so cast were blank on the proposition of license or no license, and one of the 321 was so irregularly marked that the intention of the voter could not be determined.  The voter indicated his vote on the license question on the same ballot upon which he indicated his vote for the different city officials.

Under these conceded facts the city council, acting as election canvassing board, declared that the majority of the votes cast were not in favor of license.  An appeal was duly taken from the decision of the canvassing board to the district court.  The facts material to a decision were stipulated substantially as above set out, and thereupon the court in all things sustained the action of the city council.  Contestant appeals from the judgment entered upon the decision of the court.

We shall assume that the special law above set out, under which the city of Warren exists, so far as the same relates to the manner in which the electors therein may determine the question of license to sell intoxicating liquor, has not been superseded by section 1533, R. L. 1905.

The special law provides that at any annual city election the question of license may be submitted to a vote upon proper petition and notice, and if the returns of the election canvass "show a major-

ity of the votes cast at such election to be against license, then in such case the city council shall grant no license to sell lager beer, spirituous, vinous, malt or fermented liquors in said city of Warren until reversed in the same manner at a subsequent general election." In other words, until no license had carried by the majority of votes cast at an annual city election, the council was free to grant license. It stands established that at the annual city election in March, 1911, the majority of the votes cast were against license. That being done, the law provides that no license shall thereafter be granted until the decision of the electors shall be reversed in the same manner at a subsequent election. The phrase "in the same manner" can refer to and mean nothing else than this—that at such subsequent election there shall be a majority of the votes cast in favor of license in order to reverse the existing order of things.

The words "majority of the votes cast at such election" cannot be distinguished in import and meaning from the language in enactments construed in State v. Stearns, 72 Minn. 200, 75 N. W. 210, State v. Hugo, 84 Minn. 81, 86 N. W. 784, and State v. Village Council of Osakis, 112 Minn. 365, 128 N. W. 295; and hence, there having been 321 votes cast at the election, and only 159 of these being in favor of license, or for a change in the existing condition of things in that respect, there was not a majority in favor of a reversal, or for license. Nothing is found in the case of Hopkins v. City of Duluth, 81 Minn. 189, 83 N. W. 536, except confirmatory of the view expressed in the cases cited, namely, that to determine whether there has been a majority of the votes cast for or against license the ballots upon which there has been no choice indicated on the license question must not be excluded, but counted. In this last-mentioned case the ballots which indicated that there had been a fraudulent or unsuccessful attempt to vote were held not to represent a vote cast, and were, for that reason, excluded in the count.

We cannot concur in appellant's contention that the phrase "in the same manner" applies merely to the mode of submitting the proposition to the electors for their vote. The reversal depends, not only on a submission of the question to a vote, but upon the vote cast and

the count thereof, and it stands to reason that the same mode or manner of determining the count and the majority should govern in subsequent elections as did in the first. Had there been 321 votes cast at the annual election of March, 1911, being the first vote on the proposition, and of these 159 had been against license, 149 for, and 18 blank or unintelligible on the proposition, it could not well be claimed, under the decisions cited, that the city council of the city of Warren was prohibited from granting liquor licenses.

We are of the opinion that the court correctly disposed of the appeal, and the judgment is affirmed.