# JOHN ANDERSON v. CITY OF LE SUEUR.[1]

November 13, 1914.

Nos. 18,930—(156).

**Intoxicating liquor — local option — "majority of the votes cast upon the question."**
At the city election in the city of Le Sueur, a city of the fourth class, the question as to whether licenses for the sale of intoxicating liquor should be issued by the city was duly submitted to the electors, under and pursuant to chapter 387 of the Laws of 1913, and a majority of the votes cast upon that question, but not a majority of the whole number cast at the election, were in favor of the issuance of such licenses. As the statute governing the matter provides that such question shall be decided by "a majority of the votes cast *upon the question,*" the proposition authorizing the issuance of licenses was adopted.

John Anderson gave notice of contest and appealed to the district court for Le Sueur county from the canvass of votes cast at the annual election of the city of Le Sueur held on April 7, 1914, and the decision of the common council of that city that 225 votes were cast thereat in favor of, and 212 votes were cast thereat against, granting license for the sale of intoxicating liquor in that city. The court appointed referees to inspect the ballots, and the appeal was thereafter heard by Morrison, J., who made findings and dismissed the proceedings. From the judgment entered pursuant to the order of dismissal, contestant appealed. Affirmed.

*Francis Cadwell* and *Thomas Hessian,* for appellant.
*W. C. & W. F. Odell,* for respondent.

1 Reported in 149 N. W. 472.

Note.—For the authorities upon what basis majority essential to adoption of constitutional or other special proposition submitted at general or special election is to be computed, see note in 22 L.R.A.(N.S.) 478.

Taylor, C.

Whether the city of Le Sueur should issue licenses for the sale of intoxicating liquor was duly submitted to the voters of that city at the city election held on April 7, 1914. The result of the vote, as determined and declared by the city canvassing board, authorized the issuance of such licenses. The appellant, a resident and legal voter of the city, promptly instituted a contest, and, as the result of the trial thereof, the district court found that the total number of ballots cast at the election was 446, of which 222 were in favor of license, 214 were against license, and 10 were blank. The court further found that the proposition authorizing the issuance of such licenses had been adopted by a majority of eight votes, and rendered judgment dismissing the contest. The contestant appealed.

If it required a majority of all the votes cast at the election to authorize the issuance of such licenses, the decision of the trial court was erroneous; if a majority of the votes cast upon that specific question was sufficient to confer such authority, the decision of the trial court was correct. Similar questions have been considered by this court in a number of cases. Prior to the enactment of chapter 387, p. 540, Laws of 1913, the so-called local option statutes applied only to villages and rural towns. Kleppe v. Gard, 109 Minn. 251, 123 N. W. 665. In cities such matters were governed by the provisions contained in their respective charters. The statute which applies to towns and villages prohibits the issuance of such licenses unless "a majority of votes at the last election at which the question of license was voted upon" were in favor of license. Section 1533, R. L. 1905; Section 3142, G. S. 1913. This statute has uniformly been construed to mean that no license could issue, unless more than one-half of all the votes cast at the election were in favor thereof, and that a majority of the votes cast upon that specific question, if less than a majority of the whole number cast at the election, was not sufficient to authorize such issuance. State v. Village Council of Osakis, 112 Minn. 365, 128 N. W. 295; McLaughlin v. Village of Rush City, 122 Minn. 428, 142 N. W. 713. Similar language contained in the charter of the city of Warren was held to have the same meaning. Lodoen v. City Council of City of Warren, 118

Minn. 371, 136 N. W. 1031.    The charter of the city of Ada pro-
vided that, "if a majority of the votes cast at such election *on said
question* shall be against license, no license for the sale of intoxicat-
ing liquors shall be granted by the authorities of the said city of
Ada." In Thune v. Hetland, 114 Minn. 395, 131 N. W. 372, it
was held that this provision in the charter of the city of Ada author-
ized the issuance of licenses, if a majority of the votes cast upon that
specific question, although less than a majority of the whole number
cast at the election, were in favor thereof.

As already stated, there was no general local option statute apply-
ing to cities prior to the passage of the act of 1913.    Each city was
governed in respect to such matters by the provisions contained in
its own charter.    In 1913, the legislature enacted chapter 387, p.
540, of the laws of that year which is entitled:

"An act authorizing the electors of cities of the fourth class to
vote upon the question of licensing the sale of intoxicating liquor in
such cities; and prohibiting the sale of liquor in any quantity either
wholesale or retail in any such city or the granting of any license for
such sale if a majority of the votes on such question at any election
hereunder shall be against license, and not otherwise, until such vote
shall be reversed at a subsequent election hereunder; and defining
terms used herein and prescribing penalties for violations hereof."

This statute provides that, if the license question be submitted to
the voters, a separate ballot shall be provided therefor, and, among
other things provides:

"The said ballot shall have printed thereon the words 'for license'
and 'against license,' and each qualified elector voting upon said
question, shall place a cross mark (X) in the place opposite the words
'for license' or in the place opposite the words 'against license,'
which ballot shall be deposited in a separate ballot box to be pro-
vided for in each voting precinct, and such votes shall be counted
for or against said question in accordance with the expressed will of
the elector, as provided by the election laws of this state.    The ballots
so cast shall be duly canvassed, returned and certified, according to
the law governing such city elections and if a majority of the votes
cast upon the question shall be in favor of license then license for

the sale of intoxicating liquor may be granted, but if such majority shall be against license then no license shall be granted."

This law does not purport to be an amendment of prior laws, but to be an independent act. It applies only to cities of the fourth class, and prior general laws relating to this question did not apply to such cities. The meaning of the language used in the law applying to villages and towns, and the different meaning of the different language used in the charter of the city of Ada, had been determined and announced by this court long before the passage of the act of 1913. With these different rules before them, the legislature, in its title, described the present act, in part, as an act "prohibiting the sale of liquor * * * or the granting of any license for such sale if a majority of the votes *on such question* at any election hereunder shall be against license." They then enacted in the body of the act that "each qualified elector voting *upon said question* shall place a cross mark (X) in the place opposite the words 'for license,' or in the place opposite the words 'against license' * * * and such votes shall be counted *for or against said question* in accordance with the expressed will of the elector. * * * And if a majority of the votes cast *upon the question* shall be in favor of license then license for the sale of intoxicating liquor may be granted, but if such majority shall be against license then no license shall be granted." In view of the language used, and of the circumstances under which it was used, it is entirely clear that the legislature intended to, and did, adopt the rule that cities of the fourth class should be permitted to issue licenses, "if a majority of the votes cast *upon the question*," although less than a majority of the whole number cast at the election, were in favor of license. The result is to establish a rule for cities of the fourth class different from the general rule which applies to towns and villages; but this is within the discretion of the legislature, and is a matter over which the courts have no control. It may be proper to note, in passing, that chapter 10, p. 20, Laws of 1905, being sections 3129 and 3130, G. S. 1913, may establish a different rule for villages incorporated under the laws therein referred to, than applies to other villages. This question is not considered or determined herein, and is mentioned merely to indicate

127 M.—21.

that the reference herein to villages is not intended to apply to the class of villages governed by the law of 1905.

The city of Le Sueur is a city of the fourth class. The election in controversy was held under and pursuant to the law of 1913. As "a majority of the votes cast *upon the question*" were in favor of license, the decision of the trial court was correct, and the judgment appealed from is affirmed.

BROWN, C. J. (dissenting).

The statutes referred to in the opinion are in *pari materia,* they all relate to the same subject matter, are included in the chapter relating to intoxicating liquors (G. S. 1913, c. 16), and should be construed together for the purpose of gathering the general intent of the legislature. The rule controlling the construction of such statutes is well stated by Mr. Justice Wayne in U. S. v. Freeman, 3 How. (U. S.) 556, 11 L. ed. 724, as follows:

"The correct rule of interpretation is, that if divers statutes relate to the same thing, they ought all to be taken into consideration in construing any one of them, and it is an established rule of law, that all acts in *pari materia* are to be taken together, as if they were one law. Douglas, 30; 2 Term Rep. 387, 586; 4 Maule & Selw. 210. If a thing contained in a subsequent statute be within the reason of a former statute, it shall be taken to be within the meaning of that statute."

The rule for determining the total vote cast upon questions of the kind here involved is well settled by our decisions. State v. Village Council of Osakis, 112 Minn. 365, 128 N. W. 295; McLaughlin v. Village of Rush City, 122 Minn. 428, 142 N. W. 713; Lodoen v. City Council of City of Warren, 118 Minn. 371, 136 N. W. 1031. And the rule should be uniform and applicable alike to all villages and cities operating under the general statutes of the state. It is obvious that the legislature did not deliberately intend by the different statutes referred to in the opinion to provide one rule for cities of the fourth class, another rule for certain villages, and still another for other villages, and the conflict between them, if there be any of a substantial nature, or any ambiguity therein, calls for

judicial construction, with a view to making their pertinent provisions a consistent harmonious whole. The subject of so construing separate statutes relating to the same subject is fully discussed in 2 Sutherland, St. Const. § 443, where the authorities are cited, and sustains this view of the law. In my opinion that act of 1913, construed in connection with other statutes upon the same subject, and the construction given thereto by our previous decisions, contains nothing beyond what is necessarily implied in section 3142, G. S. 1913, and the construction given the act of 1913 should follow that heretofore applied to that statute. The case of Thune v. Hetland, 114 Minn. 395, 131 N. W. 372, is not here in point. That case involved the construction of the home rule charter of the city of Ada, which provided a different rule for determining such questions. It is of course clear that, under the constitutional provisions for the adoption by certain cities and villages of home rule charters, charters so adopted may contain such provisions upon this or any other subject, as the people deem for their best interests, provided they do not conflict with the Constitution of the state or its declared policy. But, in determining the intention of such a charter, and what was meant by any particular provision thereof, reference could not be had to acts of the legislature upon the same subject. The charter provisions would be construed without reference to statutory enactments upon similar matters. In this case we are called upon to construe different statutes enacted by the same legislative body, and the rule requiring all thereof to be taken together should be applied. "The letter killeth, the spirit giveth life."

I therefore respectfully dissent.

HOLT, J.
I concur in the foregoing dissent.